# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA JURCZYK, )<br>)<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>COX COMMUNICATIONS )<br>KANSAS, LLC; )<br>COX OKLAHOMA TELECOM, LLC; )<br>and COXCOM, LLC, )<br>)<br>      Defendant. ) | Case No. 14-CV-454-TCK-FHM |

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss (Doc. 12).

**I.  Factual Background**

Plaintiff Amanda Jurczyk sued Defendants Cox Communications Kansas, LLC; Cox Oklahoma Telecom, LLC; and CoxCom, LLC ("Defendants") in state court, alleging that Defendants employed her from April 1999 until August 23, 2013.  Plaintiff alleges that she suffers from chronic migraines, for which she requested and was approved leave under the Family and Medical Leave Act ("FMLA").  Plaintiff alleges that, following a hospitalization for migraines in May 2013, Plaintiff's supervisor and Defendants' human resources manager "questioned [Plaintiff] in a negative manner regarding the use of her FMLA leave" and instructed her to fill out additional paperwork. (Compl. ¶ 18.)  Following this meeting, Plaintiff alleges Defendants "continuously contacted [her] stating that the information provided by [her] doctor was insufficient" and yet "repeatedly failed to instruct [her] or her doctor what the deficiency was." (Id. ¶ 19.)  Defendants rejected "Plaintiff's paperwork numerous times, despite having the information it needed." (*Id.*)

On or around July 23, 2013, Plaintiff was hospitalized again for migraines. Plaintiff alleges that she "used her FMLA leave for this period of time that she had to miss work due to chronic migraines" but that she "was terminated from her employment on August 23, 2013 for allegedly not having an FMLA day approved in time." (*Id.* ¶ 20.) Plaintiff further alleges that "FMLA leave was an accommodation under the [Americans with Disabilities Act] that the Plaintiff required in order to perform her job." (*Id.*)

Plaintiff asserts four claims for relief. First, Plaintiff asserts that Defendants (1) discharged her based on the disability of chronic migraines, and (2) failed to make the reasonable accommodation of providing her with FMLA leave, in violation of 42 U.S.C. § 12112 of the Americans with Disabilities Act ("ADA") ("ADA Discrimination"). Second, Plaintiff asserts that Defendant terminated Plaintiff in retaliation for exercising her FMLA rights, in violation of 29 U.S.C. § 2615(a)(2) ("FMLA Retaliation"). Third, Plaintiff asserts that Defendants interfered with Plaintiff exercising her FMLA rights by "unfair requirements for submission of paperwork, unreasonable denial of FMLA leave, and by terminating her employment when she still had leave available," in violation of 29 U.S.C. § 2615(a)(2) ("FMLA Interference"). Finally, Plaintiff asserts a state-law claim for intentional interference with emotional distress ("IIED"). Defendants filed a motion to dismiss arguing (1) certain named Defendants never employed Plaintiff, and (2) Plaintiff's allegations fail to state any claim for relief.

## II.    Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

### III. Proper Defendants

Defendants contend that Plaintiff was never employed by two of the named Defendants – Cox Communications Kansas, LLC and Cox Oklahoma Telcom, LLC. Defendants admit that CoxCom, LLC d/b/a Cox Communications Tulsa employed Plaintiff and are willing to stipulate to substitution of this named Defendant for current Defendant CoxCom, LLC. Plaintiff did not respond to these arguments in any manner. Based upon Defendants' representations, the Court shall dismiss

3

the two improper Defendants and change the case caption to reflect the proper name of Defendant CoxCom, LLC.

**IV.    ADA Discrimination**

The ADA prohibits employment discrimination on the basis of an employee's disability, stating that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "[I]n order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability."  *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011) (internal quotation marks omitted).  Defendants argue that Plaintiff has failed to adequately plead the first and second elements.

**A.    Disability**

A person is "disabled" under the ADA if she suffers from a "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  To meet this definition, "a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more major life activities."  *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) (internal quotation marks omitted).

4

Defendants concede that chronic migraine headaches may be considered an "impairment" under the ADA but contend that Plaintiff has not alleged facts showing that such impairment potentially qualifies as a disability. Defendants' argument is unpersuasive. Plaintiff alleges that she suffered from chronic migraines that caused her "severe pain, affect[ed] her ability to see, walk, communicate, think, and drive" and that her migraines resulted in two hospitalizations. (Compl. ¶ 32.) Plaintiff has clearly alleged that her migraines are severe and that they impact life activities of seeing, walking, talking, thinking, and driving. The Court will not require any greater degree of specificity at the pleading stage. *See E.E.O.C. v. Burlington N. Santa Fe R.R.*, No. 12-2634, 2013 WL 1397130, at *7-8 (D. Kan. Apr. 5, 2013) (explaining that Tenth Circuit did not require this type of specific pleading in ADA cases prior to *Iqbal* and predicting that Tenth Circuit would follow Third Circuit's approach, which does not require a plaintiff "to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations" at the pleading stage) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213-14 (3rd Cir. 2009)). Defendants' cited decision holding that a plaintiff's migraines were not a disability under the ADA, *Allen v. Southcrest Hospital*, 455 F. App'x 827 (10th Cir. 2011), turned on a developed factual record at the summary judgment stage, not an inadequately pled complaint.

**B.  Qualified**

Defendants argue that, because Plaintiff alleges she was terminated based on non-FMLA approved absences, she has conceded she was not qualified to perform the "essential function" of having regular and punctual attendance. Again, however, this argument is premature. Under certain circumstances, "[a]n allowance of time for medical care or treatment may constitute a reasonable accommodation" under the ADA. *Murphy v. Samson Res. Co.*, 525 F. App'x 703, 707 (10th Cir.

5

2013). Plaintiff's allegations imply that, with a reasonable accommodation of a certain period of FMLA leave, she would have been able to return to her job, thereby fulfilling the essential function of attendance. This is sufficient to plausibly demonstrate that, with a reasonable accommodation, she remained "qualified" to perform the essential functions of her job at the time of her termination.[1]

## V. FMLA Retaliation/FMLA Interference

The FMLA requires certain employers to provide employees suffering from a serious medical condition with up to twelve weeks of unpaid leave per year. *Bass v. Potter*, 522 F.3d 1098, 1099 (10th Cir. 2008). However, FMLA regulations place certain "notice requirements" upon employees where leave is unforeseeable, including "comply[ing] with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c). As to the content of the notice, an employee must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *See id.* § 825.303(b); *see also Brooks v. Via Christi Reg'l Med. Ctr., Inc.*, No. 08-1376, 2010 WL 446523, at *12 (D. Kan. Feb. 4, 2010) (explaining that employees need not expressly invoke the FMLA but must give some indication of a serious health condition or other FMLA-qualifying event). Tenth Circuit law is unclear as to which party bears the burden of proving satisfaction of notice requirements and whether this is an element of a plaintiff's FMLA claim or an affirmative defense. *Compare Valdivia v. BNSF Ry. Co.*, No. 07-2467, 2009 WL 352604, at *5

---

[1] At later stages of the proceedings, Defendants may attempt to demonstrate that FMLA leave was not a reasonable accommodation because it was uncertain "if or when [Plaintiff would] be able to return to work" with her condition. *See id.* (affirming summary judgment in favor of defendant where plaintiff "failed to present evidence of the expected duration of her impairment" and "it was uncertain if or when [plaintiff] would be able to return to work given the sporadic nature of her migraines"). But it is premature for the Court to reach any conclusions as to what Plaintiff did or did not communicate to Defendants regarding the expected duration of her impairment.

(D. Kan. Feb. 12, 2009) (assuming that lack of notice is an affirmative defense upon which defendant bears the burden of proof) *with Cox v. Kempton Co.*, 2008 WL 2660974, at *6 (W.D. Okla. June 26, 2008) (dismissing claim, in part, based on failure to plead satisfaction of notice requirements).

Relying on *Cox*, Defendants argue that Plaintiff's FMLA claims must be dismissed because Plaintiff failed to "allege that she complied with Defendants' usual and customary notice requirements applicable to use of FMLA leave and further fails to articulate any factual averments that show she timely complied with Defendants' notice requirements." (Mot. to Dismiss 10.) Defendants' argument is easily rejected. Assuming a plaintiff bears any burden regarding notice at the pleading stage, which is questionable, Plaintiff has obviously satisfied any such obligations. Plaintiff alleges: (1) her employer had previously approved FMLA benefits based upon her condition of chronic migraines; (2) following a hospitalization for migraines in May 2013, her supervisor questioned her about use of FMLA leave and instructed her to provide additional paperwork; (3) her employer unfairly rejected this paperwork; (4) Plaintiff was hospitalized again on July 23, 2013 for migraines and "used her FMLA leave" during this time; and (5) Plaintiff was terminated on August 23, 2013 for "allegedly not having an FMLA day approved in time." (Compl. ¶ 20.) These allegations are replete with notice. Her employer knew she suffered from chronic migraines, had granted FMLA leave based on migraines in the past, and allegedly fired Plaintiff for failing to timely get approval for leave following her July 2013 hospitalization for migraines. This is in stark contrast to the plaintiff in *Cox*, who alleged no facts suggesting that she suffered from any serious health condition, that her employer should have been aware of any serious health condition, or that her

employer had any notice that particular absences were even *potentially* covered by the FMLA. *Cf. Cox*, 2008 WL 2660974, at *6.[2]

**VI.    IIED**

In order to succeed on an IIED claim, a plaintiff must ultimately prove: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff to suffer emotional distress; and (4) the plaintiff's emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991) (applying Oklahoma law). To satisfy the extreme and outrageous element, a plaintiff must prove the defendant's conduct was so extreme and outrageous as to be beyond all possible bounds of decency. *Eddy v. Brown*, 715 P.2d 74, 77 (Okla.1986) ("Conduct which, though unreasonable, is neither beyond all possible bounds of decency in the setting in which it occurred, nor is one that can be regarded as utterly intolerable in a civilized community, falls short of having actionable quality.") (quotations omitted). Oklahoma law directs the district court to act as a "gatekeeper" and make an initial determination about the outrageousness of the defendant's conduct before sending the claim to a jury. *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1377-78 (Okla.1978) ("The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery . . . .").

The most extreme conduct alleged in the Complaint is that Plaintiff's employer unfairly rejected FMLA paperwork, questioned Plaintiff in a negative manner regarding this paperwork, and

---

[2] Even if a plaintiff bears some burden of pleading notice, this Court would not require a plaintiff to plead what the defendant's "usual and customary" policies are, how she specifically complied with them, or whether "unusual circumstances" prevented her from complying with them, as suggested by Defendants. Nor was this the reason for the court's dismissal in *Cox*.

terminated her for unlawful reasons. Oklahoma courts have repeatedly rejected IIED claims involving much more severe workplace treatment and/or terminations. *See, e.g., Eddy*, 715 P.2d at 76-77 (multiple instances of ridicule and harassment and alleged retaliatory reassignment from graveyard shift were not sufficiently outrageous); *Miner v. Mid-Am. Door Co.*, 68 P.3d 212, 223-24 (Okla. Civ. App. 2002) (employer's response to reports of extremely hostile work environment, even assuming it was unreasonable and untimely, was not sufficiently outrageous); *Mirzaie v. Smith Cogeneration, Inc.,* 962 P.2d 678, 682-83 (Okla. Civ. App. 1998) (employer making harassing phone calls in the middle of the night, requiring him to do unnecessary work, and terminating him two hours before his wedding were not sufficiently outrageous); *Anderson v. Okla. Temp. Servs., Inc.*, 925 P.2d 574, 577 (Okla. Civ. App. 1996) (former supervisor's conduct of describing how sexual favors could be used to obtain business, discussing former employee's faults with another employee, making lewd remarks about former employee, leaving door open to restroom, and commenting on her sex life within hearing distance of employees found was not sufficiently outrageous); *see generally Kisselburg v. AR Allen Group, Inc.*, 2005 WL 2897431, at *4 (W.D. Okla. Nov. 1, 2005) (noting that "[d]ecisions applying Oklahoma law have found that employment-related fact scenarios generally do not support intentional infliction of emotional distress claims" and that such a claim requires "extremely rigorous proof"). Thus, there are no allegations in Plaintiff's Complaint that state a plausible IIED claim, and such claim shall be dismissed with prejudice.

**VII.    Conclusion**

Defendant's Motion to Dismiss (Doc. 16) is GRANTED in part and DENIED in part. The motion is granted as to Defendants Cox Communications Kansas, LLC and Cox Oklahoma Telecom,

LLC, and these Defendants are terminated as parties to the litigation. CoxCom, LLC d/b/a Cox Communications Tulsa is hereby SUBSTITUTED for Defendant CoxCom, LLC, and the Clerk is directed to amend the case caption to reflect this substitution.

As to the claims against Defendant CoxCom, LLC d/b/a Cox Communications Tulsa, the motion is granted as to Plaintiff's IIED claim and denied as to all other claims.

**SO ORDERED this 7th day of January, 2015.**

**TERENCE C. KERN**
**United States District Judge**